**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1261
_____

LISA M. PAPOTTO

v.

HARTFORD LIFE & ACCIDENT INSURANCE
COMPANY,

Appellant
_____

No. 12-1362
_____

LISA M. PAPOTTO,
an individual,

Appellant

v.

HARTFORD LIFE & ACCIDENT INSURANCE
COMPANY
_____

APPEAL FROM THE UNITED STATES DISTRICT
COURT

FOR THE DISTRICT OF NEW JERSEY
(D.C. Civ. Action No. 1-10-cv-04722)
District Judge: Honorable Renée Marie Bumb

_____

Argued: March 21, 2013

_____

Before: McKEE, *Chief Judge*, SMITH, and GREENAWAY,
JR., *Circuit Judges*.

(Opinion Filed: September 26, 2013 )

_____

OPINION

_____

Brian P. Downey, Esq. (argued)
Pepper Hamilton LLP
100 Market Street
P.O. Box 1181
Harrisburg, Pennsylvania  17108-1181

Maria Feeley, Esq.
Pepper Hamilton LLP
18th & Arch Streets
3000 Two Logan Square
Philadelphia, Pennsylvania  19103-0000
        *Counsel for Appellant/Cross-Appellee Hartford Life &*
        *Accident Insurance Company*

Benjamin Goldstein, Esq. (argued)
Drinkwater & Goldstein, LLP
277 White Horse Pike
Suite 200
Atco, New Jersey 08004
        *Counsel for Appellee/Cross-Appellant Papotto*


GREENAWAY, JR., *Circuit Judge*.

Appellee/Cross-Appellant Lisa Papotto ("Appellee") is a widow seeking payment of benefits from Appellant/Cross-Appellee Hartford Life & Accident Insurance Co. ("Appellant" or "Hartford") under an accidental death and dismemberment policy in relation to her husband's death. The policy at issue explicitly excludes losses "sustained while Intoxicated." Hartford's Plan Administrator denied payment of benefits to Appellee because the deceased had consumed alcohol prior to his death. On appeal, the District Court concluded that the policy implicitly required causal connection between intoxication and the loss, and remanded the case to the Plan Administrator. Both parties posit that we have appellate jurisdiction to hear an appeal from this remand order. Because we conclude that the remand order is not immediately appealable as a final judgment and that the collateral order doctrine does not apply, we dismiss the appeal for lack of jurisdiction.

# I. BACKGROUND

## A. Facts

The underlying facts in this case are tragic and largely undisputed. On August 7, 2009, Frank Papotto, Jr. ("Mr. Papotto"), late husband of Appellee, was playing golf with several co-workers in New Jersey. That afternoon, he drank approximately four to five beers. At some point during the round, Mr. Papotto dropped his cell phone and fell out of a golf cart while reaching for it. As a result of the fall, Mr. Papotto suffered a head injury and died approximately five hours later.

A toxicology screen conducted posthumously revealed that Mr. Papotto had a blood-alcohol level ("BAL") of 0.115 %. The New Jersey state standard for intoxication is 0.08, putting Mr. Papotto's BAL over the legal limit for operating a motor vehicle. N.J. Stat. Ann. § 39:4-50 (2012).

At the time of his death, Mr. Papotto was an employee of TD Bank. As an employee, Mr. Papotto was entitled to benefits under TD Bank's welfare benefit plan which provided, among other things, accidental death and dismemberment insurance coverage ("AD&D"). This AD&D policy ("the Policy") was purchased through Hartford. Mr. Papotto designated Appellee the beneficiary under the Policy.

The Policy provides Hartford with "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of [t]he Policy." (JA 129.) Under the terms of the Policy, benefits are payable when Mr. Papotto "sustain[s] an Injury that results in [a loss — dismemberment or death —] within 365 days of the date

4

of accident." (JA 124.)  The Policy states that losses caused or contributed to by an "Injury sustained while Intoxicated" are excluded.  (JA 127.)  The Policy defines "Intoxicated" as when the insured's "blood alcohol content" or "the results of other means of testing blood alcohol level . . . meet or exceed the legal presumption of intoxication, or under the influence, under the law of the state where the accident occurred."  (JA 127.)  Appellant contends that this provision is a "status-based exclusion," whereby coverage is denied simply by the status of the insured, and does not include any element of causation. (Appellant Br. 6.)

## B.     **Procedural History**

On August 18, 2009, Appellee filed a claim with Hartford for the AD&D benefits.  On October 26, 2009, Hartford denied the claim because the evidence showed that Mr. Papotto was intoxicated at the time of his death.  On December 21, 2009, Appellee appealed Hartford's denial to the Plan Administrator.  Appellee argued that: (1) Hartford could not rely on the results of the toxicology screen to prove that Mr. Papotto was intoxicated at the time of death (but offered no evidence to show the results of the screen were inaccurate or unreliable); (2) Hartford could not apply the New Jersey standard for intoxication because Mr. Papotto was not operating a motor vehicle at the time of his death; and (3) the Policy's intoxication exclusion must be read to require a causal connection between the intoxication and the loss in order to bar coverage.  On January 19, 2010, the Plan Administrator upheld Hartford's decision to deny the AD&D benefits.

On September 15, 2010, Appellee filed a complaint against Hartford in the District Court for the District of New

5

Jersey pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), challenging the Plan Administrator's findings and renewing the three arguments that she raised in her appeal to the Administrator. Both parties brought motions for summary judgment.

The District Court rejected Appellee's first argument and found that it was generally reasonable for an administrator to rely on a toxicology report to establish evidence of intoxication. The District Court also rejected Appellee's second argument and found that it was reasonable for Hartford to rely on the New Jersey statute defining intoxication. Thus, the District Court noted that the only remaining issue in dispute was "the propriety of [Hartford's] construction of the Policy." *Papotto v. Hartford Life & Accident Ins. Co.*, No. 10-4722, 2011 WL 6939331, at \*1 (D.N.J. Dec. 30, 2011). The District Court agreed with Appellee as to this issue, and found that Hartford's interpretation of the policy was unreasonable.[1] The District Court concluded that the intoxication exclusion provision must be read to bar coverage only when intoxication caused or contributed to the loss or death.

The District Court thus denied both summary judgment motions as premature, and remanded the case back to the Plan Administrator for consideration of whether Mr. Papotto's intoxication caused or contributed to his death. *Id.* In its order, the District Court also permitted the Plan Administrator to re-open the record and consider additional

---

[1] The District Court noted that it made this finding in light of Hartford's inherent conflict of interest as administrator and payor of claims.

6

evidence to determine causation. The District Court did not enter judgment in favor of any party. A docket entry from January 6, 2012 reads "***Civil Case Terminated. (Per Chambers) . . . ." (JA 26.)

Hartford timely appealed the District Court's determination that the intoxication exclusion provision only precludes payment when the intoxication caused or contributed to the death. Papotto cross-appealed, claiming that the District Court erred by permitting the Plan Administrator to re-open the record and consider new evidence.

After the filing of the notice of appeal, we sua sponte raised a question about our appellate jurisdiction. The parties submitted briefing on this issue, asserting that we have jurisdiction over the District Court's remand order pursuant to the collateral order doctrine.

## II.    **APPELLATE JURISDICTION**

Before we inquire into the merits of the issues on appeal, we must address the question of our appellate jurisdiction.[2] *See Elliot v. Archdiocese of New York*, 682 F.3d 213, 219 (3d Cir. 2012) ("Our jurisdictional inquiry must precede any discussion of the merits of the case for if a court lacks jurisdiction and opines on a case over which it has no authority, it goes 'beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers.'" (quoting *Steel Co. v. Citizens for a Better Env't*,

---

[2] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132.

7

523 U.S. 83, 94 (1998))). Both parties have indicated their consent to our appellate jurisdiction, but "it is well established that we have an independent duty to satisfy ourselves of our appellate jurisdiction regardless of the parties' positions." *Kreider Dairy Farms, Inc. v. Glickman*, 190 F.3d 113, 118 (3d Cir. 1999); *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 73 (1997) ("[E]very federal appellate court has a special obligation to satisfy itself . . . of its own jurisdiction . . . , even though the parties are prepared to concede it." (first alteration in original) (internal quotation marks omitted)); *In Re Resorts Int'l Inc.*, 372 F.3d 154, 161 (3d Cir. 2004) ("Subject matter jurisdiction cannot be conferred by consent of the parties." (internal quotation marks omitted)).

Our authority to determine the extent of our own jurisdiction is plenary. *United States v. Pelullo*, 178 F.3d 196, 200 (3d Cir. 1999). "[I]f we determine that we do not have jurisdiction over this appeal, our 'only function remaining [will be] that of announcing the fact and dismissing the case.'" *Elliott*, 682 F.3d at 219 (second alteration in original) (quoting *Steel Co.*, 523 U.S. at 94).

Federal appellate courts have jurisdiction predominantly over appeals from "final decisions of the district courts of the United States." 28 U.S.C. § 1291. Thus, in accordance with § 1291, "[w]e have jurisdiction to review only those orders of the district courts that are considered 'final.'" *ADAPT of Phila. v. Phila. Hous. Auth.*, 417 F.3d 390, 394 (3d Cir. 2005). A final decision is one that "'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Harris v. Kellogg Brown & Root Servs., Inc.*, 618 F.3d 398, 400 (3d Cir. 2010) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)). Thus,

8

unless a statute specifically grants otherwise, appellate jurisdiction is dependent on whether the district court's decision may be properly characterized as "final," rendering it subject to appeal. We refer to § 1291's restriction on appellate jurisdiction as the finality rule. *See, e.g.*, *Giles v. Campbell*, 698 F.3d 153, 157 (3d Cir. 2012).

The finality rule is not inflexible, however. The Supreme Court of the United States, recognizing that there are some issues that are "too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated," created the collateral order doctrine. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). To fall within the "'small class' of decisions excepted from the final-judgment rule by *Cohen*, the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978).

## A.   <u>Finality Under § 1291</u>

Although both parties contend that we should examine our jurisdiction under the collateral order doctrine, our first inquiry is always whether an order is "final" under § 1291. Whether a remand to an ERISA plan administrator is a final decision and qualifies for review pursuant to § 1291 is a matter of first impression for this Court. Many of our sister courts have found remands to ERISA plan administrators analogous to remands to administrative agencies and have drawn from this jurisprudence to address questions of finality in the ERISA context. *See, e.g.*, *Rekstad v. First Bank Sys., Inc.*, 238 F.3d 1259, 1262 (10th Cir. 2001); *Petralia v. AT&T*

9

*Global Info. Solutions Co.*, 114 F.3d 352, 354 (1st Cir. 1997). We follow suit and begin by exploring our jurisprudence on appellate jurisdiction over remands to administrative agencies.

1.      Remands to Administrative Agencies

"The general principle enunciated by this [C]ourt is that district court orders remanding cases to administrative agencies are not final and appealable." *Bhd. of Maint. Way Emps. v. Consol. Rail Corp.*, 864 F.2d 283, 285 (3d Cir. 1988) [hereinafter *Brotherhood*].  We have determined, however, that a remand to an administrative agency may be deemed final for purposes of § 1291 "when a [d]istrict [c]ourt finally resolves an important legal issue in reviewing an administrative agency action and denial of appellate review before remand to the agency would foreclose appellate review as a practical matter." *Kreider*, 190 F.3d at 118.  We distill a three-pronged standard from this statement in *Kreider*; accordingly, we may exercise appellate jurisdiction pursuant to the finality rule over remands to administrative agencies when: (1) the remand "finally resolves" an issue, (2) the legal issue is "important," and (3) denial of immediate review will "foreclose appellate review" in the future.[3]  Notably, in grappling with our jurisdiction over remands, we have

---

[3] Creating a test to ascertain our jurisdiction over remands is not novel. *See In re Owens Corning*, 419 F.3d 195, 203 (3d Cir. 2005) (laying out our four-factor test to evaluate whether district court remands to bankruptcy court are final under § 1291).

consistently accorded significant weight to the third factor — i.e., potential for evasion of future review. *See AJA Assocs. v. Army Corps of Eng'rs*, 817 F.2d 1070, 1073 (3d Cir. 1987) (finding jurisdiction over a remand requiring the administrative agency to provide a procedural due process hearing because the district court's decision granting applicants the right to a hearing could not receive later appellate review); *United Steelworkers of Am. Local 1913 v. Union R.R. Co.*, 648 F.2d 905, 910 (3d Cir. 1981) (finding jurisdiction over a remand order that required a reconstituted administrative board to conduct an entirely new hearing because the remand order essentially disposed of all previous findings and orders and any new determinations would likely be unreviewable).

To be clear, we do not engage in this analysis to determine if there is an exception to the finality rule; courts of appeals do not have authority to create exceptions to congressional limits on jurisdiction. *See Hertz Corp. v. Friend*, 559 U.S. 77, 84 (2010) ("Congress . . . determine[s] the scope of the federal courts' jurisdiction."); *Kreider*, 190 F.3d at 122-26 ("[T]he judiciary has no power to make exceptions to the congressional determinations [of appellate jurisdiction].") (Sloviter, J., concurring). *Contra id.* at 120 (referring to the three-pronged standard as an "exception to finality in agency proceedings"). Rather, this analysis reflects a "practical construction of finality." *Id.* at 125 (Sloviter, J., concurring); *see also Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) ("This Court . . . has long given § 1291 a practical rather than a technical construction." (internal quotation marks omitted)); *Rekstad*, 238 F.3d at 1262 (referring to the analysis of remands under § 1291 as the "practical finality rule"); *Petralia*, 114 F.3d at 354 (referring

11

to the analysis of remands as a "corollary rule" to the finality rule).[4]   Therefore, we utilize the *Kreider* test merely to

---

[4] Indeed, as the Supreme Court has recognized, even the collateral order doctrine is "best understood not as an exception to the final decision rule laid down by Congress in § 1291, but as a practical construction of it." *Will v. Hallock*, 546 U.S. 345, 349 (2006) (internal quotation marks omitted). We recognize that our jurisprudence on this issue has not always been consistent. *Compare, e.g.*, *In re Grand Jury*, 705 F.3d 133, 146 (3d Cir. 2012) (referring to the collateral order doctrine as an "exception[] to the general rule of finality under § 1291"), *with Chehazeh v. Att'y Gen.*, 666 F.3d 118, 136 (3d Cir. 2012) (recognizing that the collateral order doctrine is not an exception, but a practical construction of the finality rule).  Given the Supreme Court's recent move away from the term "exception," *compare Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 430 (1985) (discussing the "'collateral order exception' to the final judgment rule"), *with Hallock*, 546 U.S. at 349, we decline to use this term ("exception") when referring to either the collateral order doctrine or the *Kreider* test.   Because our Constitution establishes that Congress alone sets the jurisdictional boundaries of the federal courts, *Hertz*, 559 U.S. at 84; *Kline v. Burke Constr. Co.*, 260 U.S. 226 233-34 (1922), "there can be no judicially created 'exception'" to these boundaries, *Kreider*, 190 F.3d at 122 (Sloviter, J., concurring).  At times, Congress has expanded our appellate jurisdiction by statute. *See, e.g.*, 28 U.S.C. § 1292(a)(1); 28 U.S.C. § 1292(b); 28 U.S.C. § 1452.  But the Supreme Court has clearly stated that these Congressional statutory grants "by no means suggest[] that [the courts] should now be more ready to make similar judgments [on jurisdiction] for themselves." *Digital Equip.*

evaluate whether a specific decision of the district court — incorporated within a remand order — is indeed "final" for purposes of § 1291. *See Harris*, 618 F.3d at 400 ("'[T]here are instances in which a final decision is not a final judgment.'" (quoting *Abney v. United States*, 431 U.S. 651, 658 (1977))).

*Kreider* aptly exemplifies our application of the three-pronged test. In *Kreider*, a farmer ("Kreider") applied to the United States Department of Agriculture ("USDA") for an exemption to avoid paying certain fees related to his dairy farm. 190 F.3d at 116. Kreider's application was denied by the market administrator. The decision was reversed by the administrative law judge ("ALJ"), which was in turn reversed by the judicial officer ("JO"). Kreider filed a complaint in district court, which remanded the case for further evidentiary findings ("first order"). On remand, the ALJ denied Kreider exemption status once again, and Kreider appealed. The JO

---

*Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 880 n.7 (1994). We thus believe that the better interpretation of both the *Kreider* test and the collateral order doctrine is that they are tools to be used by courts in faithfully interpreting the finality requirement of § 1291.

We also note that this view is consistent with our precedent on remands to bankruptcy courts. *See Owens*, 419 F.3d at 203 (noting that the four-factor test for remands to bankruptcy court is merely an application of "a broader concept of finality"); *Buncher Co. v. Official Comm. of Unsecured Creditors of GenFarm Ltd. P'ship IV*, 229 F.3d 245, 250 (3d Cir. 2000) (noting that the four-factor test reflects "a relaxed standard of finality").

13

determined the appeal was untimely because it was mailed on the date the appeal was due via Federal Express. Although the applicable regulation required that an appeal is deemed to be filed when it is postmarked, the JO determined here that the term "postmarked" required a United States Postal Service postmark, rather than the mark of Federal Express. *Id.* at 117. Kreider returned to district court. Upon review, the district court found that Kreider's appeal was timely and thus remanded for consideration on the merits ("second order").

The USDA appealed to us, arguing that the district court erred in finding Kreider's appeal timely. On appeal, we sua sponte raised the question of our jurisdiction. We found no jurisdiction over the first order for consideration of additional evidence because the first order "[did] not finally resolve a particularly important legal issue, and, more importantly, it [was] not an order that [would] evade appellate review." *Id.* at 120.

By contrast, recognizing that questions regarding the timeliness of an appeal directly implicated disputes over the district court's jurisdiction, we found jurisdiction over the second order. We noted that the second order,

> resolves an issue of law that may evade review if immediate appeal is not permitted; should Kreider receive the relief it seeks on remand, it is doubtful that the USDA would be able to appeal its own decision in order to raise the procedural issues decided by the District Court.

*Id.*

14

2.      Application

        We believe this test, applying a practical construction of finality, is equally applicable in the ERISA context.  As jurisdictional questions under § 1291 "should be made on a case-by-case basis," *Rekstad*, 238 F.3d at 1263, we apply this rule in light of the particular facts before us, bearing in mind our jurisprudence discussed above.

        The remand order at issue here directed the Plan Administrator to take two actions: (1) to consider additional evidence, and (2) to read a causation requirement into the intoxication exclusion provision and determine whether Mr. Papotto's intoxication caused or contributed to his death.  In looking only to the order for consideration of more evidence, we easily determine that we lack appellate jurisdiction over this portion of the remand.  As we have previously determined, "orders directing remands to [administrative agencies] to consider additional evidence [are] nonfinal." *Brotherhood*, 864 F.2d at 285.  (internal quotation marks omitted) (holding that a remand order to the railroad board for consideration of more evidence relating to the termination of employees was not final and appealable).

        Moreover, this portion of the remand order fails the first of the *Kreider* prongs — it does not "finally resolve" anything.  We take guidance from a recent Fourth Circuit case, which squarely addressed the same issue and held that a remand order to an ERISA administrator for consideration of more evidence was not final for purposes of § 1291 because it resolved a purely procedural issue and did not address the merits of the claim. *Dickens v. Aetna Life Ins. Co.*, 677 F.3d 228, 231-32 (4th Cir. 2012).  In the same vein, we now hold that the first portion of the remand order requiring the

15

consideration of more evidence involves a strictly procedural matter.  There is no final resolution on the merits, the first of the *Kreider* prongs is not met, and appellate jurisdiction does not exist.[5]

The second portion of the remand order — directing the Plan Administrator to read a causation requirement into the intoxication exclusion provision and determine whether Mr. Papotto's intoxication caused or contributed to his death — is a more complicated matter.

a.    "Finally Resolves"

We first ask whether the remand order of the District Court "finally resolves" the underlying issue of this case.  *See Kreider*, 190 F.3d at 120.  Other circuits have examined this prong by asking a simple question:  Does the remand order make an ultimate determination as to eligibility, thus leaving

---

[5] Appellee argues that if we find jurisdiction over the remand order regarding the intoxication exclusion provision, then the portion of the remand order mandating consideration of more evidence should be joined for judicial economy.  We can find no support for this proposition.  Moreover, this suggestion seems to run contrary to the Supreme Court's caution that judicial economy counsels *against* extending appellate jurisdiction.  *Accord Mohawk*, 558 U.S. at 106-07 (recognizing that final-judgment rule prevents "piecemeal, prejudgment appeals" that would "undermine[] efficient judicial administration" (internal quotation marks omitted)).  However, because we will determine that we lack jurisdiction over the remaining portion of the remand order, we need not decide this issue.

the plan administrator with nothing left to do but issue an order? *See Gerhardt v. Liberty Life Assur. Co. of Boston*, 574 F.3d 505, 508 (8th Cir. 2009) (explaining that a final order is one that "leaves nothing for the [lower] court to do but execute the judgment" (internal quotation marks omitted)); *Rekstad*, 238 F.3d at 1262 (finding remands final when the district court "essentially instructs the agency to rule in favor of the [one party]").

The Tenth Circuit addressed this very question in *Spradley v. Owens-Illinois Hourly Employees Welfare Benefit Plan*. 686 F.3d 1135, 1139-40 (10th Cir. 2012). In that case, an employee filed suit following the denial of his benefits under a permanent and total disability life insurance plan. The district court reversed, finding that the employee was entitled to benefits under the unambiguous language of the Plan and remanded the case to the administrator for further proceedings in light of the determination on eligibility. *Id.* at 1139. The Tenth Circuit held that when the district court essentially instructs the administrator to rule in favor of the plaintiff, the remand order is final and appellate jurisdiction is appropriate. Specifically, the Tenth Circuit observed,

> [i]n this case, the district court held that Plaintiff was eligible for benefits under the plain language of the Plan, and the court's order left no room for the Plan administrator to question this holding on remand. Further, [because] the terms of the Plan clearly define how much of a benefit an eligible employee in Plaintiff's position should receive . . . , the district court's order essentially left the Plan administrator with nothing to do on remand but award the requested benefits, a ministerial task

17

involving no discretion on the Plan administrator's part.

*Id.* at 1140.

The remand order here, unlike the one in *Spradley*, requires further action by the Plan Administrator. Rather than leaving it with "nothing to do," the remand order instructs the Plan Administrator to consider additional evidence and engage in a fact-finding process to determine whether Mr. Papotto's intoxication caused or contributed to his death. The determination of eligibility, therefore, has not been "finally resolved."[6]

---

[6] Appellant contends that we should not view the "finally resolved" prong so stringently and that we should exercise jurisdiction, not only when the remand order determines eligibility, but also when its ruling *significantly affects* eligibility — such as here where the District Court has compelled the Plan Administrator to construe the plan in a particular fashion. (*See* Appellant Br. 19.) In support, Appellant urges us to follow the Ninth Circuit's decision in *Hensley v. Northwest Permanente P.C. Retirement Plan & Trust*, 258 F.3d 986, 993 (9th Cir. 2001), *overruled on other grounds by Abatie v. Alta Health & Life Ins.*, 458 F.3d 955 (9th Cir. 2006). In *Hensley*, nurse practitioners and physician assistants were denied benefits under pension plans because the plan administrator determined that they were not "employees" under the W-2 definition, and thus were ineligible. The nurse practitioners and physician assistants filed suit in district court. The district court remanded the case to the plan administrator for a new determination as to the plaintiffs' eligibility for benefits under the common law

b.      Foreclosure of Future Appellate Review

We next examine the third *Kreider* prong,[7] i.e., whether the denial of immediate review will "foreclose appellate review as a practical matter." *See Kreider*, 190 F.3d at 118, 120. Appellant insists that, if we do not entertain the

definition of "employee." Upon review, the Ninth Circuit found that it had jurisdiction under § 1291 because it was an appeal from a decision "directly implicating fundamental eligibility decisions under the Plan." *Id.* at 993. Although we accord respect to our sister court, we believe its decision in *Hensley* runs contrary to the Supreme Court's admonition that finality precludes consideration of even a "fully consummated decision[]" if it is only a "step[] towards final judgment." *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996) (internal quotation marks omitted).

[7] We have no doubt that the second *Kreider* prong — importance — is met. Courts have ruled on both sides of the question the District Court resolved here — whether causation must be read into an exclusion provision. *See, e.g.*, *Rau v. Hartford Life & Accidental Ins. Co.*, No. 11-cv-01772, 2013 WL 1985305, at \*5 (D. Conn. May 13, 2013) (upholding the validity of a status-based intoxication exclusion); *Bickel v. Sunbelt Rentals, Inc.*, No. 09-2735, 2010 WL 3938348, at \*4 (D. Md. Oct. 6, 2010) (holding that "[a]dding a causation element to the exclusion would be an impermissible modification [of] the Plan").

19

remand order at this current junction, it may elude us forever. Specifically, Appellant fears the following scenario: On remand, the plan administrator examines the evidence and determines that intoxication did not contribute to Mr. Papotto's death. The Plan Administrator will then order payment of benefits to Appellee. And because an insurance company has no vehicle under ERISA by which it may challenge its own decision, Appellant will be unable to return to our Court to challenge the District Court's ruling and will be forced to pay benefits.[8]

---

[8] Appellant's fear is not unwarranted. Indeed, the Tenth Circuit has acknowledged this very possibility and has held that remand orders to ERISA plan administrators present unique finality problems:

> [I]n the administrative agency context, if nowhere else . . . agencies may be barred from seeking district court (and thus circuit court) review of their own administrative decisions. Consequently, if a district court remands an issue to an administrative agency and essentially instructs the agency to rule in favor of the plaintiff, the agency may well be foreclosed from again appealing the district court's determination at any later stage of the proceeding.

*Rekstad*, 238 F.3d at 1262 (internal quotation marks omitted).

We agree that the Plan Administrator may decide in Appellee's favor on remand. We also agree that there is no provision in the ERISA statute permitting an insurance company to challenge the decision of its own plan administrator in district court.[9] We disagree, however, that if these events transpire, Appellant will be left with no recourse to appeal the District Court's ruling on causation. As explained below, because we believe the District Court only "administratively closed" the case and has thus retained jurisdiction over the matter, Appellant will be able to return to District Court.

Retention of jurisdiction through the administrative closing of a case is an established practice in district courts within our Circuit. Indeed, "[f]ederal courts have long distinguished dismissals from administrative closings." *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 246 (3d Cir. 2013). Dismissals end all proceedings, at which time the district court relinquishes any jurisdiction over the matter. *See Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 86 (2000) (noting that the dismissal "plainly disposed of the entire case on the merits and left no part of it pending before the court"). By contrast, administrative closings do not end the proceeding. Rather, they are a practical tool used by courts to "prune . . . overgrown dockets" and are "particularly useful in circumstances in which a case, though not dead, is

---

[9] Section 502(a)(3) of ERISA only permits "a participant, beneficiary, or fiduciary" to bring a civil suit seeking enforcement of an ERISA plan; it does not permit an insurance company to bring a direct challenge in federal court to challenge a plan administrator's decision. *See* 29 U.S.C. § 1132(a)(3).

21

likely to remain moribund for an appreciable period of time." *Freeman*, 709 F.3d at 247 (internal quotation marks omitted); *see also Lehman v. Revolution Portfolio, LLC*, 166 F.3d 389, 392 (1st Cir. 1999) ("Administrative closings comprise a familiar, albeit essentially ad hoc, way in which courts remove cases from their active files without making any final adjudication."). Most importantly, district courts retain jurisdiction over administratively closed cases. This means that a court may reopen the case — either on its own or at the request of a party — at any time. *Freeman*, 709 F.3d at 247.

In this case, it is clear that the District Court only administratively closed, and thus has retained jurisdiction over, the proceedings below. On December 30, 2011, the order of the District Court remanding the case to the Plan Administrator for further evaluation was entered. On January 6, 2012, the clerk entered "***Civil Case Terminated" on the docket. (JA 26.) True, the District Court used the term "terminated." But we must focus on the substance of the order, not the label. Significantly, the District Court never mentioned dismissal; moreover, the substance of the remand, requiring further fact-finding that may be reviewed at a later date, does not suggest permanence. The District Court did not "disassociate itself from [the] case;" it merely put its involvement on hold. *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995). We therefore conclude that the District Court's docket entry terminating the case was an administrative closing that has not deprived the District Court of jurisdiction and that either party may, at any time, move to re-open proceedings and seek our review.

We note that our analysis of the posture of the District Court proceedings is in harmony with that of our sister courts. The First Circuit, in adopting a synonymous view, explained,

[o]rdinarily implicit in a district court's order of remand to a plan fiduciary is an understanding that after a new decision by the plan fiduciary, a party seeking judicial review in the district court may do so by a timely motion filed in the same civil action, and is not required to commence a new civil action. To avoid any misunderstanding that might otherwise occur, we state that we interpret the order of the district court in this case as having retained jurisdiction, in this sense, to hear and decide any timely motion for judicial review filed after further proceedings before the plan fiduciary. This is so regardless of whether the case is formally held open or instead administratively closed on the district court docket in the meantime.

*Petralia*, 114 F.3d at 355; *see also Young v. Prudential Ins. Co. of Am.*, 671 F.3d 1213, 1214-16 (11th Cir. 2012) (finding that the district court retained jurisdiction despite the fact that it entered "[t]his case is closed" on its docket following a remand order to an ERISA plan administrator); *Bowers v. Sheet Metal Workers' Nat'l Pension Fund*, 365 F.3d 535, 537 (6th Cir. 2004) (interpreting the district court's remand order as retaining jurisdiction and permitting "either party to challenge the eligibility determination that the plan administrator renders on remand"); *cf. Rekstad*, 238 F.3d at 1261-62 (assuming that the district court retained jurisdiction over the remand order where the district court expressly stated in its docket that the case file was "subject to a motion to re-open").

### 3. Remand Order Is Not Final Under § 1291

We conclude that the District Court's remand order directing the Plan Administrator to read causation into the intoxication provision is not final. It has neither "finally resolved" the issue of eligibility, nor will it evade future appellate review. *See Kreider*, 190 F.3d at 120. As such, we must "resist[] the temptation to abandon the deeply held distaste for piecemeal litigation simply because we are presented with a case whose immediate resolution would clarify the law and terminate a drawn-out controversy." *Brotherhood*, 864 F.2d at 286 (internal quotation marks omitted).

### B.    **Collateral Order Doctrine**

Having decided that the remand order is not a final order under § 1291 because it is not a final resolution of eligibility and will not forever evade our review, we next turn to whether the collateral order doctrine vests us with jurisdiction. Given our analysis above, the collateral order doctrine offers the parties no solace. We may not hear this matter.

Under the three-pronged test of the collateral order doctrine, an interim decision is appealable if it: "(1) conclusively determines the disputed question, (2) resolves an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment." *Sell v. United States*, 539 U.S. 166, 176 (2003) (alterations omitted) (internal quotation marks omitted); *see also Praxis Props., Inc. v. Colonial Sav. Bank*, 947 F.2d 49, 54 (3d Cir. 1991). "The criteria are 'stringent.'" *N.J., Dep't of Treasury, Div. of Inv. v. Fuld*, 604 F.3d 816,

819 (3d Cir. 2010) (quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994)).

In light of our discussion above, the first and third prongs of the collateral order doctrine are not satisfied. As to the second prong, while the issue may be important, it is not separate or collateral. The focus of the remand — i.e., *how* to determine eligibility — directly implicates the heart of this case — whether Mr. Papotto's death is an eligible event for distribution of benefits. Consequently, the interpretation of the intoxication clause "touches on the merits" of the benefits determination. *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1117 (3d Cir. 1986); *see also Cunningham v. Hamilton Cnty.*, 527 U.S. 198, 206 (1999) (noting that the separateness prong is only satisfied when the issue on appeal is "completely divorced" from the merits of a case); *Dickens*, 677 F.3d at 233 (declining to find jurisdiction over a remand order under the collateral order doctrine where the district court instructed the plan administrator on the definition of eligibility but left for the plan administrator to conduct a fact-finding analysis as to whether that definition was met). Because the remand order satisfies none of the three prongs, we find the collateral order doctrine inapplicable.

## III.  CONCLUSION

The District Court's remand order is not a final order under § 1291. Nor is it appealable under the collateral order doctrine. Therefore, we are bereft of jurisdiction and will dismiss this appeal.