PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1481
_____

JOSEPH STEVENS

v.

SANTANDER HOLDINGS USA INC SELF INSURED
SHORT TERM DISABILITY PLAN; LIBERTY LIFE
ASSURANCE CO OF BOSTON, DBA LIBERTY MUTUAL;
SANTANDER HOLDINGS USA INC.; SANTANDER
HOLDINGS USA INC LONG TERM DISABILITY PLAN,

Appellants

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 3-11-cv-07473)
Honorable Peter G. Sheridan, District Judge
_____

Argued May 20, 2015

BEFORE: GREENAWAY, JR., KRAUSE, and
GREENBERG, Circuit Judges

(Filed: August 24, 2015)

_____

Mary C. Gordon
Amy L. Bashore
Patricia A. Smith (argued)
Ballard Spahr
210 Lake Drive East
Suite 200
Cherry Hill, NJ 08002

    Attorneys for Appellants

Mark D. DeBofsky (argued)
DeBofsky & Associates
200 West Madison Street
Suite 2670
Chicago, IL 60606

Bonny G. Rafel
Suite 410
17 Hanover Road
P.O. Box 97
Florham Park, NJ 07932

    Attorneys for Appellee

_____

OPINION OF THE COURT
_____

GREENBERG, Circuit Judge.

# I. INTRODUCTION

This matter comes on before this Court on an appeal from an order entered in an action that plaintiff-appellee Joseph Stevens, a former employee of a subsidiary of defendant-appellant Santander Holdings USA Inc. ("Santander"), brought against Santander seeking to recover benefits from two disability benefit plans that Santander provided for its eligible employees. As an employee of a Santander subsidiary, Sovereign Bank, Stevens participated in these plans, a short-term disability plan ("STD") and a long-term disability plan ("LTD"). In October 2010, Stevens sought STD benefits through the administrator of Santander's plans, defendant-appellant Liberty Life Assurance Company of Boston, doing business as Liberty Mutual ("Liberty Mutual"). After it initially awarded STD benefits to Stevens, Liberty Mutual determined that Stevens no longer suffered from a qualifying disability, a determination that led it to terminate his STD benefits. Stevens responded by bringing this action pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq., seeking reinstatement of the payment of benefits. The District Court found that Liberty Mutual's decision to terminate Stevens's STD benefits was arbitrary and capricious and remanded the case to the plan administrator with instructions to reinstate Stevens's STD benefit payments retroactively and to determine his eligibility for LTD benefit payments.

Santander and Liberty Mutual appealed to this Court, but Stevens moved to dismiss the appeal for lack of jurisdiction, arguing that the District Court's remand order to the plan administrator was not a "final decision" appealable pursuant to 28 U.S.C. § 1291 at that time. Before reaching the merits of this

3

appeal, we must determine whether the District Court's remand order is presently final and appealable under § 1291 or is otherwise appealable. Upon review, we hold that the District Court has retained jurisdiction over the case and that the order from which appellants have appealed is not yet appealable. We therefore will dismiss this appeal for lack of jurisdiction.

## II.  BACKGROUND

### A.  Factual Background and Administrative Proceedings

Sovereign Bank employed Stevens as a Retail Investment Financial Consultant II from October 2, 2006, through October 5, 2010. During his employment, Stevens received treatment for ankylosing spondylitis, a chronic inflammatory disease. As we have indicated, Santander sponsored and funded an STD benefits plan for its employees and engaged Liberty Mutual as the plan's administrator. But even though Liberty Mutual was the plan administrator, Santander retained final decision-making authority in the review of STD claims and Santander paid any benefits awarded. Under the STD plan, a covered employee, such as Stevens, is considered "disabled" if objective medical evidence demonstrates that he is unable to perform the "material and substantial" duties of his own occupation, in Stevens's case as a Retail Investment Financial Consultant II. "Material and substantial" duties are those normally required to be performed that cannot be eliminated or modified.

Santander also purchased an LTD benefit plan from Liberty Mutual. The administration and funding of the LTD plan

4

differed from that of the STD plan because Liberty Mutual both administered and had final decision-making authority under the LTD plan and paid benefits awarded under the plan. To qualify for LTD benefits, an employee needs to show that he is "unable to perform the Material and Substantial duties of his Own Occupation" for an "elimination period" of 180 days, and thereafter cannot perform these duties for the next 24 months. During the "elimination period," an employee does not receive benefits under the LTD plan, but he can receive LTD benefits during the 24-month "Own Occupation" period that follows. However, during the elimination period the employee may be eligible for STD benefits, and thus the two plans complement each other as LTD benefits can start when STD benefits stop.[1] After the expiration of the 24-month "Own Occupation" period, an employee will be eligible for LTD benefits only if he demonstrates that he is "unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation." (J.A. 67.)

On or about October 5, 2010, Stevens began a leave of absence from Sovereign Bank due to worsening symptoms related to his medical condition. Consequently, Stevens filed a claim with Liberty Mutual for STD payments as he asserted that he was subject to qualifying physical restrictions and cognitive impairments. Liberty Mutual reviewed records of Stevens's treating rheumatologist and approved his request for STD

---

[1] In his brief Stevens indicates that "[t]he short-term disability ('STD') coverage provide[s] for up to 25 weeks of benefits (177 [sic] days of disability) following a 5 day elimination period." (Appellee's br. 5.)

benefits through December 21, 2010.[2]   In December, Liberty Mutual reviewed updated medical information and approved payment of STD benefits through February 5, 2011.

Liberty Mutual again reviewed Stevens's updated records in February 2011, this time determining that his medical reports did not substantiate Stevens's subjective complaints of pain. Accordingly, it forwarded the case for review to an independent physician, Dr. Sara Kramer, a board certified physician in internal medicine and rheumatology.   After Dr. Kramer reviewed Stevens's records and spoke with Stevens's treating rheumatologist, she concluded that Stevens could return to work provided that he was allowed certain accommodations, including being permitted to stretch and change positions as needed throughout the course of an eight-hour day.[3]  Liberty Mutual subsequently informed Stevens that his condition no longer met the definition of disability and therefore it would not award him additional STD benefits.  The termination of Stevens's eligibility for STD benefits effectively rendered Stevens ineligible for LTD benefits as he could not demonstrate that he was unable to perform his own occupation's duties throughout the 180-day elimination period.

---

[2]  Stevens indicates that he also applied for and received temporary disability benefits from the State of New Jersey at the same time predicated on the same information that he supplied to Liberty Mutual to support his STD claim.  (Appellee's br. 7-8.)

[3] Stevens asserts that Dr. Kramer spent a total of one hour and 15 minutes reviewing his case and that Liberty Mutual did not ask Stevens to submit to a physical examination.  (Appellee's br. 11-12.)

After Liberty Mutual notified Stevens that he was not eligible for further STD benefits, Stevens filed a series of administrative appeals with Liberty Mutual that he supported with medical records and additional documentation. In response to each of Stevens's requests for review of additional information, Liberty Mutual enlisted medical professionals to evaluate the information in his record and the new information that he provided. On November 10, 2011, Liberty Mutual made a final determination that Stevens was no longer eligible for STD benefits, and it provided its final recommendation and analysis to that end to Santander, which, in turn, approved the decision a short time thereafter. Liberty Mutual then notified Stevens of the final decision to deny him further STD benefits.

## B. District Court Proceedings

On December 22, 2011, a little over a month after Liberty Mutual notified him of the final decision that he no longer qualified for STD benefits, Stevens filed this action in the District Court pursuant to ERISA, seeking both retroactive reinstatement of his STD benefits starting on February 5, 2011, and continuing through April 4, 2011, and LTD benefits starting on April 5, 2011, the end of the elimination period. The parties filed cross-motions for summary judgment, and on January 29, 2014, the District Court granted Stevens's motion and denied Santander's motion in an oral decision. The Court pointed to "a number of procedural anomalies that can lead to a finding of an arbitrary and capricious termination" of Stevens's STD benefits and explained that it was "most important" that "despite retaining final approval authority over the STD plan . . . Santander failed to conduct any meaningful independent review of [Stevens's] file," a procedure that the Court viewed as "'rubber stamping' Liberty's benefit

7

determinations." (J.A. 19-20.) The Court determined that the decision to terminate Stevens's STD benefits and thus, in effect, to deny him LTD benefits "was not a product of reasoned decision making" and determined that the appropriate remedy was to (1) reinstate STD benefits because they had been terminated after being awarded and (2) remand Stevens's claim to the plan administrator for full consideration of his eligibility for LTD benefits. (Id. 4-5, 20-21.) The Court entered a separate judgment on January 29, 2014, evidencing its determination and directing the clerk of court "to close this case." (Id. 5.)

Santander and Liberty Mutual timely appealed to this Court, but Stevens moved to dismiss the appeal for lack of jurisdiction. In contending that we do not have jurisdiction, Stevens argues that the District Court's January 29, 2014 decision and judgment were not final because they did not resolve the amount of "Own Occupation" benefits to which he was entitled under the STD plan or his eligibility for benefits under the LTD plan.[4] Santander and Liberty Mutual contend that the District Court's decision was final because (1) the calculation of the amount of STD benefits owed to Stevens was a "ministerial" task not subject to genuine dispute, and (2) an analysis of Stevens's eligibility for LTD benefits could be made separately from the other issues in this case. They also cite as indicia of finality the District Court's direction to its clerk to close the case and its entry of a separate judgment evidencing its determination.

## III. DISCUSSION

As we have explained, prior to reaching the merits of an

---

[4] As a matter of convenience, we usually will refer to the District Court's decision and judgment as though they are a single order.

appeal, we determine if we have jurisdiction. See Poole v. Family Court of New Castle Cnty., 368 F.3d 263, 264 (3d Cir. 2004). Courts of appeals most commonly have jurisdiction over appeals taken from "final decisions of the district courts of the United States." 28 U.S.C § 1291. Consequently, our first inquiry is to decide whether the District Court's order remanding Stevens's claim to the plan administrator was a final appealable order under § 1291. We analyze our jurisdiction under § 1291 primarily by applying the three-prong test we recognized in Papotto v. Hartford Life & Accident Insurance Co., 731 F.3d 265 (3d Cir. 2013). For the reasons that we will explain, our consideration of the Papotto test and the other cases that we discuss leads us to conclude that we do not have jurisdiction over the District Court's order under § 1291, and inasmuch as we do not have jurisdiction on any other basis, we will dismiss the appeal.

### A. Case Law Applicable to Our Jurisdictional Analysis

#### 1. Papotto's Three-Prong Test

In Papotto, an ERISA case involving a claim for accidental death benefits under an accidental death and dismemberment ("AD&D") policy, the plan administrator denied benefits because the plaintiff's decedent was intoxicated at the time of his accidental death. 731 F.3d at 267-68. After both parties filed summary judgment motions, the district court found that a provision in the AD&D policy precluding recovery for accidental death or injury if the decedent was intoxicated at the time of his death or injury was applicable only if there was a causal connection between the intoxication and the death or injury. Id. at 268. As a result, the court denied both parties' summary judgment motions and remanded the case to the plan

9

administrator for consideration of whether the decedent's intoxication caused or contributed to his death.  Id.  The insurer appealed, and the plaintiff cross-appealed.  Id. at 268-69.

We raised the issue of jurisdiction sua sponte and considered whether the district court's order remanding the case was final under 28 U.S.C. § 1291.  731 F.3d at 269-70.  We noted that the remand order directed the plan administrator to take two actions: "(1) to consider additional evidence, and (2) to read a causation requirement into the intoxication exclusion provision and determine whether [the decedent's] intoxication caused or contributed to his death."  Id. at 272.  We considered the case to be analogous to cases dealing with appeals from orders remanding cases to administrative agencies.  This conclusion led us to "distill" a three-prong test for determining the finality of the order in that case.  Id. at 270.  Under that test, we may exercise jurisdiction over remand orders in ERISA benefit cases when "(1) the remand 'finally resolves' an issue, (2) the legal issue is 'important,' and (3) denial of immediate review will 'foreclose appellate review' in the future."  Id. at 270.[5]  In fashioning this test, we noted that we "consistently [have] accorded significant weight to the third factor—i.e., potential for evasion of future review."  Id.  Applying that test in Papotto, we "easily determine[d]" that we lacked appellate jurisdiction over the first portion of the order remanding for consideration of additional evidence.  Id. at 272.  Not only had we held previously that "orders directing remands to [administrative agencies] to consider additional evidence [are] nonfinal," but we also reasoned that the

---

[5] We understand the Papotto third prong to mean that it is necessary to allow an immediate appeal because there will not be an opportunity for an appeal in the future.

10

order failed the first prong of the test that we had distilled because it did not "finally resolve" anything. Id. (alterations in original) (internal quotation marks omitted).

The second portion of the order for remand in Papotto directing the plan administrator to read a causation requirement into the intoxication exclusion provision when evaluating Papotto's case required a separate analysis. Beginning with the first prong of our test—whether the order "finally resolve[d]" the underlying issue of the case—we followed the lead of other courts of appeals by asking: "Does the remand order make an ultimate determination as to eligibility, thus leaving the plan administrator with nothing left to do but issue an order?" Id. at 273. We held the order did not "finally resolve[]" the issue of the plaintiff's eligibility and therefore required further action by the plan administrator. Id. at 274.

After noting that the second Papotto prong—importance—was met, id. at 274 n.7, we addressed the third prong, stating that "no provision in the ERISA statute permit[s] an insurance company to challenge the decision of its own plan administrator in district court." Id. at 274-75 & n.8. We nevertheless held that the insurer was not left without recourse because the district court retained jurisdiction over the case, inasmuch as "administrative closings do not end the proceeding. Rather, they are a practical tool used by courts to 'prune . . . overgrown dockets' and are 'particularly useful in circumstances in which a case, though not dead, [is] likely to remain moribund for an appreciable period of time.'" Id. at 275 (first alteration in original) (quoting Freeman v. Pittsburgh Glass Works, LLC, 709 F.3d 240, 247 (3d Cir. 2013)). We also pointed out that a court may reopen an administratively closed case—"either on its own or at the request

11

of a party—at any time." Id.[6] We concluded that the district court's order in Papotto administratively closed the case but did not dismiss it. Overall, we were satisfied that the third Papotto test prong for allowing immediate appeal was not met.

We further held that the order was not appealable under the collateral order doctrine because it did not conclusively determine the disputed question, was not effectively unreviewable on appeal from a final judgment, and was not separate from the merits of the action as it "directly implicate[d] the heart of [the] case—whether Mr. Papotto's death [was] an eligible event for distribution of benefits." Id. We therefore dismissed the appeal for lack of jurisdiction. Id. at 277.

## 2. Mead and Finality Considerations

A recent ERISA case from the Court of Appeals for the Second Circuit, Mead v. Reliastar Life Insurance Co., 768 F.3d 102 (2d Cir. 2014), is useful in our consideration of the finality of the remand order now on appeal. Mead concerned an employee disability benefits claim in circumstances factually similar to those that we address now. There, the employer, Reliastar, provided a group insurance policy to its employees that included two kinds of benefits comparable to the STD and LTD benefits that Santander provided: own-occupation benefits for up to 24 months and any-occupation benefits thereafter. Id. at 104. Mead filed suit under ERISA after Reliastar denied her claim for

---

[6] See also Bullard v. Blue Hills Bank, 135 S.Ct. 1686, 1691 (2015) (describing a final decision as "a ruling 'by which a district court disassociates itself from a case'" (quoting Swint v. Chambers Cnty. Comm'n, 514 U.S. 35, 42, 115 S.Ct. 1203, 1208 (1995))).

12

disability benefits under its group policy.  Id. at 104-05.

The district court entertained Mead's suit twice and both times remanded it for reconsideration, first because Reliastar's reason for denial of own-occupation benefits did not identify the evidence that Reliastar credited and the evidence that it rejected in arriving at its decision, and second because the court believed that Reliastar "ignored" several physical requirements of Mead's former position, refused to recognize the "ample" objective evidence supporting her subjective complaints of pain, and provided what the district court believed were "obviously false or misleading reasons" for discrediting the conclusions of its own neurologist.  Id. at 105 (internal quotation marks omitted).  After issuing its second remand order instructing Reliastar to "calculate and award" the own-occupation benefits and to determine whether Mead was entitled to any-occupation benefits, the district court directed its clerk to "close the case," though it indicated that it would entertain a separate motion from Mead for prejudgment interest, attorneys' fees, and costs.  Id. at 106 (internal quotation marks omitted).  Reliastar appealed from this second remand order to the Court of Appeals for the Second Circuit.

The court of appeals in its analysis of its jurisdiction observed that "remands to ERISA plan administrators generally are not 'final' because, in the ordinary case, they contemplate further proceedings by the plan administrator."  Id. at 108.  The court explained that it nonetheless would "examine the content of the particular ERISA remand in order to determine its appealability," citing Papotto with approval.  Id.  Further, "to preserve an ERISA plan administrator's ability to obtain appellate review of a nonfinal remand order," the court decided that it

13

generally would "interpret a district court's remand order as [retaining] jurisdiction over the case such that, after a determination by the plan administrator on remand, either party may seek to reopen the district court proceeding and obtain a final judgment." Id. at 108-09.

The court of appeals concluded that the district court's remand order was not final and appealable under either a conventional application of § 1291 or pursuant to the collateral order doctrine. Id. at 113.[7] In determining that the remand order was not final and appealable, the court reasoned that by remanding the issue of Mead's eligibility for any-occupation benefits without addressing the merits of that issue, the district court's order did not "conclusively determine" Reliastar's liability to Mead under her ERISA claim.[8] Id. at 209. Importantly, the

---

[7] As we noted in Papotto, when considering the collateral order doctrine, the Supreme Court in Will v. Hallock, 546 U.S. 345, 349, 126 S.Ct. 952, 957 (2006), applied a practical construction of rather than an exception to § 1291 to bring a collateral order appeal within that section. Papotto, 731 F.3d at 271 n.4.

[8] Appellants posit that Mead rejected the approach that Papotto adopted when Papotto formulated the test for deciding whether remands to ERISA plan administrators are appealable. This view is an overstatement; Mead ultimately declined to decide whether to apply its own precedent governing the finality of orders remanding cases to administrative agencies, but its analysis mirrored our own in Papotto. See Mead, 768 F.3d at 108-09, 111-12, 114 (analyzing whether the remand order contemplated further proceedings by the plan administrator and whether the district court retained jurisdiction over the case, permitting later

court rejected Reliastar's argument that the any-occupation and own-occupation portions of the order were separable, reasoning that "[w]hile it may be true that Mead's eligibility for 'any occupation' benefits has no practical effect on whether she is entitled to receive 'own occupation' benefits, this has no impact on [the court's] jurisdiction because a district court's decision that does not dispose of all of the plaintiff's claims for relief is not 'final.'" Id. at 110 (citing Liberty Mut. Ins. Co. v. Wetzel, 424 U.S. 737, 744, 96 S.Ct. 1202, 1206 (1976)). Moreover, the court determined that even the own-occupation portion of the order was not final, as the amount of benefits due had not yet been determined, and calculation of that amount was more than a "ministerial task." Id. at 110-11 & n.5.

### 3. Carr and Finality of the District Court Order

Appellants' argument that we have jurisdiction because the District Court's order consists of "a final order and a remand order" that are "inextricably linked" is predicated in part on our opinion in Carr v. American Red Cross, 17 F.3d 671 (3d Cir. 1994). In Carr, we analyzed the appealability of an order that dismissed the American Red Cross as a party and remanded the case to a state court because the district court believed that it did not have subject matter jurisdiction in the absence of the Red Cross as a party and declined to exercise supplemental jurisdiction over the case. Id. at 674.

We explained that the district court's dismissal order needed to satisfy two separate jurisdictional requirements to be appealable: First, to avoid the bar to appellate review in 28

appellate review).

15

U.S.C. § 1447(d),[9] the dismissal order had to be "logically precedent to, and separable from" the decision to remand the case to state court, a requirement that we held had been satisfied. Id. at 675. The second requirement was that the dismissal order be final. Id. We held that the order was final under 28 U.S.C. § 1291 because dismissal of the appeal would "have the practical effect of denying later appellate review of [the] district court's underlying order," as the case was remanded to state court without the Red Cross as a party, and, as a result, the state court could not review the order dismissing the Red Cross from the case. Carr, 17 F.3d at 678. We also held that the order was appealable under the collateral order doctrine because it "conclusively determine[d] [a] disputed question, resolve[d] an important issue completely separate from the merits of the action, and [was] effectively unreviewable on appeal from a final judgment." Id. at 675-76 (quoting Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458 (1978)) (internal quotation mark omitted). Therefore, we concluded that the dismissal order was reviewable on appeal, and we also held that the remand order was appealable as well.

But the procedural posture of Carr differs from that in our case because the District Court's order here is not final under either a conventional application of § 1291 or the collateral order doctrine. For the reasons we explain below, the District Court retained jurisdiction over Stevens's claims after the remand, and

---

[9] "An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise." 28 U.S.C. § 1447(d).

any party will be able to move to reopen the case at some future date following which the parties will be able to appeal from the District Court's orders in the case including the earlier January 29, 2014 remand order. Cf. Carr, 17 F.3d at 677 (distinguishing as unappealable those orders that, "though unreviewable in federal court, would be reviewable by [a] state appellate court on appeal").

## B. Analysis of Our Jurisdiction

We principally analyze whether we have jurisdiction over this appeal under the three-prong test outlined in Papotto: (1) whether the remand finally resolves an issue, (2) whether the legal issue is important, and (3) whether unless there is immediate review, there can never be appellate review of the remand order. 731 F.3d at 270.

We will consider first whether the remand order made a final resolution of Stevens's LTD disability eligibility. It is surely clear that the second part of the District Court's order, which instructs the plan administrator to consider fully Stevens's LTD benefits claim, does not "end[] the litigation on the merits and leave[] nothing for the court to do but execute the judgment." Coopers, 437 U.S. at 467, 98 S.Ct. at 2457 (internal quotation marks omitted). The opposite is true because the remand order's plain terms require the plan administrator to make a new adjudication; the first prong of the three-part Papotto test to allow immediate appeal therefore has not been satisfied, as the order determines neither whether Stevens is eligible for LTD benefits nor the amount of those benefits. Papotto, 731 F.3d at 273; see Liberty Mut., 424 U.S. at 742-44, 96 S.Ct. at 1206-07.

While we recognize that if Stevens qualifies for full STD

benefits, as he does under the District Court's decision, he will have satisfied the LTD requirement that he be unable to perform his own occupation duties during the LTD 180-day elimination period, he must do more than obtain a favorable determination on that issue to be eligible for LTD benefits. To qualify for LTD benefits after the expiration of the 180-day period, Stevens also must demonstrate that he cannot perform the duties of his own occupation for the next 24 months and thereafter cannot perform the duties of any occupation. These requirements are distinct from the requirements for eligibility for STD benefits and, in the second situation, are more demanding because to qualify for STD benefits, an employee merely needs to demonstrate that he cannot perform the duties of his own occupation during the initial 180-day period.

A determination of whether the District Court's order insofar as it reinstated Steven's STD benefits satisfies Papotto's first prong requires a more complex analysis. We acknowledge that the Court's direction to the plan administrator with respect to benefits under the STD plan was to undertake what arguably is a "ministerial task." After all, inasmuch as Stevens was awarded STD benefits before the remand, it appears that Liberty Mutual only needs to multiply the amount Stevens previously was awarded per month by the remaining number of months of benefits to which he is entitled pursuant to the District Court's decision under the STD policy and add appropriate interest. But we need not decide whether the order "finally resolves" the issue of STD benefits because, as we will explain, the order is not appealable under Papotto's third and most important prong.

In considering Papotto's third prong, we determine that our dismissal of this appeal for lack of jurisdiction will not mean

that there can never be an appellate review of the order awarding Stevens STD benefits, though Liberty Mutual and Santander suggest otherwise. Our dismissal of an appeal from a remand order in an ERISA action generally would not preclude a party from filing an appeal of the remand order at a later time. Our examination of the case law satisfies us that any of the parties—including Santander and Liberty Mutual—can preserve its right to appeal to this Court to challenge the District Court's decision by filing a motion to reopen the case in the District Court after the remand to the plan administrator. If Liberty Mutual denies Stevens LTD benefits, he can seek to reopen the case and appeal the decision denying the benefits to the District Court, and, after the District Court's decision, one or both parties may appeal to this Court. If Liberty Mutual grants LTD benefits on remand, Santander can move to reopen the case and obtain entry of a final judgment, from which it may appeal the District Court's January 29, 2014 order. In the meantime, Santander can seek a stay of the District Court's order to award STD benefits pending further proceedings. See Mead, 768 F.3d at 112.[10]

---

[10] At oral argument, appellants pointed out that they sought such a stay from the District Court, but the Court has not ruled on their motion. In considering the motion for a stay of the order to award STD benefits, the Court should be mindful of our inquiry under Papotto, which focuses on whether dismissing the appeal will prevent future review as a practical matter, 731 F.3d at 270, and thus should consider the feasibility of Santander recouping its payment of STD benefits, in the absence of a stay, if such benefits are ultimately determined to have been awarded wrongfully. We note that the district court in Mead granted a stay under similar circumstances. See 768 F.3d at 106.

It is also significant that the District Court did not intend to enter a final judgment under Federal Rule of Civil Procedure 54 as it did not make the findings required by that rule to enter a final judgment on either the STD or LTD claim.  See Elliott v. Archdiocese of N.Y., 682 F.3d 213, 229 (3d Cir. 2012); Powers v. Southland Corp., 4 F.3d 223, 237 (3d Cir. 1993) ("The dismissal of a party or a particular cause of action does not necessarily make a decision final.").  While partial review might be efficient in this case, our jurisdictional concerns are paramount: we must "resist[] the temptation to abandon the deeply held distaste for piecemeal litigation simply because we are presented with a case whose immediate resolution would clarify the law and terminate a drawn-out controversy."  Papotto, 731 F.3d at 276 (alteration in original) (quoting Bhd. of Maint. of Way Emps. v. Consol. Rail Corp., 864 F.2d 283, 286 (3d Cir. 1988)) (internal quotation marks omitted).

We make clear here that regardless of delay or resource costs, this Court generally will consider remands to ERISA plan administrators nonfinal because, in the ordinary case, they contemplate that the plan administrator will engage in further proceedings.  We also make clear that we will interpret a district court's remand order to a plan administrator in an ERISA case as including a reservation of the court's jurisdiction over the case so that, after a determination by the administrator on remand, either party may seek to reopen the district court proceedings and obtain a final judgment.  See, e.g., Young v. Prudential Ins. Co., 671 F.3d 1213, 1216 (11th Cir. 2012).  The finality of an order ultimately will turn on the substance of the district court's order, such that even a district court's assertion of finality cannot

20

establish appellate jurisdiction to review a decision that is not otherwise "final" for purposes of § 1291.

Though appellants ask that we sever the STD portion of the District Court's order and review it now, we decline to do so. In making this request, appellants rely principally on City of Waco v. United States Fidelity & Guaranty Co., 293 U.S. 140, 55 S.Ct. 6 (1934). However, we consistently have interpreted City of Waco as permitting severance and appellate review only where refusing to do so would render a portion of a remand order unreviewable. Compare Powers, 4 F.3d at 237 (holding that an order allowing a relation back amendment and remanding to state court was unreviewable because "no doctrine . . . would bar the state court from reviewing the federal district court's interlocutory decision to allow the relation back amendment," and thus, there was no "right at stake the value of which effectively will be lost if the order is not immediately appealable"), with Beneficial Consumer Disc. Co. v. Poltonowicz, 47 F.3d 91, 93 (3d Cir. 1995) (exercising jurisdiction over an appeal from an order dismissing a cross-claim against the IRS on grounds of sovereign immunity but not over an order remanding remaining claims to state court). Here, the District Court has retained jurisdiction and there is no need for us to entertain a piecemeal appeal.

### C.  Constitutionality of Remand to the Plan Administrator

Stevens argues that orders remanding cases to plan administrators are not permissible under ERISA and "may even be unconstitutional." (Appellee's br. 34.)  Stevens accordingly contends that we should order Liberty Mutual to pay both the STD and LTD benefits instead of remanding the matter for a

21

determination of Stevens's eligibility for LTD benefits even though there has not been an administrative or judicial determination that he is entitled to benefits during the 24-month "Own Occupation" period following the elimination period, nor has there been any determination that he is entitled to benefits during the "Any Occupation" period that follows.

We, however, will not address this request on the merits as it is not properly before us because Stevens did not file a cross-appeal from the District Court's order remanding the case. "Absent a cross-appeal, an appellee may 'urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court,' but may not 'attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary.'" El Paso Natural Gas Co. v. Neztsosie, 526 U.S. 473, 479, 119 S.Ct. 1430, 1434-35 (1999) (quoting United States v. Am. Rwy. Express Co., 265 U.S. 425, 435, 44 S.Ct. 560, 564 (1924)). Stevens is seeking impermissibly to enlarge his rights under the District Court's order as he is attempting to obtain an award of LTD benefits. Therefore, he is doing more than attacking the reasoning underlying the District Court's order; he is seeking an award of previously unawarded relief, and he cannot obtain that relief in the absence of a cross-appeal. See El Paso Natural Gas, 526 U.S. at 479, 119 S.Ct. at 1434-35; cf. Blum v. Bacon, 457 U.S. 132, 137 n.5, 102 S.Ct. 2355, 2359 n.5 (1982) (holding that failure to file a cross-appeal did not bar an argument where accepting the argument would not "alter the relief ordered in the judgment").

## IV. CONCLUSION

22

For the foregoing reasons, we will dismiss this appeal for lack of jurisdiction and will remand the case to the District Court for further proceedings.