Mead v. Reliastar Life Insurance Company

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2011

Docket No. 11-192-cv

Submitted: August 23, 2011          Decided: September 16, 2014

_____

SUSAN MEAD,

*Plaintiff-Appellee*,

- v. -

RELIASTAR LIFE INSURANCE COMPANY,

*Defendant-Appellant.*

_____

Before: WINTER and HALL, *Circuit Judges.*[*]

On plaintiff-appellee's motion to dismiss defendant's appeal from a December 17, 2010 judgment of the United States District Court for the District of Vermont (Sessions, *J.*), the plaintiff contends that we are without appellate jurisdiction under 28 U.S.C. § 1291 because the district court did not enter a final judgment but instead remanded her claim for ERISA benefits to the insurance plan administrator for further consideration.

It is hereby ORDERED that the motion to dismiss is GRANTED and the appeal is DISMISSED.

> Jonathan M. Feigenbaum, Boston, Massachusetts, *for Plaintiff-Appellee.*
>
> William D. Hittler, Nilan Johnson Lewis PA, Minneapolis, Minnesota, *for Defendant-Appellant.*

---

[*] The Honorable Roger J. Miner, originally a member of the panel, died on February 18, 2012. The two remaining members of the panel, who are in agreement, have determined the matter. *See* 28 U.S.C. § 46(d); 2d Cir. IOP E(b); *United States v. Desimone*, 140 F.3d 457 (2d Cir. 1998).

Matthew B. Byrne, Gravel & Shea, Burlington, Vermont, *for Defendant-Appellant*.

PER CURIAM:

Susan Mead participated in a group long-term disability ("LTD") insurance policy administered by Reliastar Life Insurance Company ("Reliastar"). Mead, who suffers from degenerative cervical disc disease, sought LTD benefits under this policy, asserting that her "total disability" prevented her from performing her own occupation or any other. Reliastar denied her claim, causing Mead to bring this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") in which she seeks a declaratory judgment that she is entitled to the LTD benefits. Finding Reliastar's benefits determination arbitrary and capricious, the district court remanded the matter to the company with instructions that it calculate the amount of benefits owed to Mead because she was unable to perform the duties of her own occupation and determine whether she was eligible for additional benefits because she could not perform the duties of any other occupation. Reliastar appealed, and Mead now moves to dismiss for lack of appellate jurisdiction, arguing that the remand order is not a "final decision" under 28 U.S.C. § 1291. While this is a familiar issue in this circuit, we have never definitively decided whether, or under what circumstances, a district court's remand to an ERISA plan administrator is immediately appealable. We hold that under the circumstances of this case, the remand order is not an immediately appealable final decision under either the traditional principles of finality or our precedents governing remands to administrative agencies. We therefore dismiss Reliastar's appeal for lack of appellate jurisdiction.

# BACKGROUND

## I.    Mead's Group Insurance Policy

Mead was a long-time employee of Reliastar Financial Corporation ("Reliastar Financial") who ended her tenure there in 2000.  In connection with her employment, Mead participated in a group LTD insurance policy administered by Reliastar (the "Plan").  Under the Plan, Mead was eligible upon a showing of "total disability" to receive two forms of LTD benefits covering separate temporal periods.  First, she could receive "own occupation" LTD benefits for up to 24 months if she demonstrated that her disability prevented her from performing the duties of her own occupation.  After the expiration of this 24-month period, Mead could continue to receive "any occupation" LTD benefits by showing that her disability made her unable to perform the duties of any occupation for which she was qualified or could reasonably become qualified.

## II.    Proceedings before the Plan Administrator and District Court

In 2003, Mead submitted a claim for LTD benefits under the Plan, asserting that her degenerative cervical disc disease prevented her from working.[1]  Reliastar denied the claim, concluding that Mead had not shown that she was unable to perform the duties of her own occupation.  Mead then filed a federal complaint pursuant to Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), seeking a declaratory judgment that she was entitled to 24 months of "own occupation" benefits, plus interest.  In subsequent filings, she also sought "any occupation" benefits covering the time between the end of the initial 24-month period and

---

[1] In 2000, Mead exercised an option in her employment contract with Reliastar Financial that terminated her employment but entitled her to continue participating in the Plan for a period of three years.

the date of the district court's judgment. The parties cross-moved for summary judgment and, in March 2008, the district court remanded the matter to Reliastar for further proceedings. *See Mead v. Reliastar Ins. Co.*, No. 05-cv-332, 2008 WL 850675, at \*1 (D. Vt. Mar. 27, 2008) (Sessions, *J.*). The court held that Reliastar's denial of Mead's claim for "own occupation" LTD benefits was "arbitrary and capricious" because it was "impossible to tell" which evidence Reliastar credited and which evidence it rejected to arrive at its decision. *Id.* at \*4.

On remand, Reliastar reviewed additional evidence but again denied Mead's claim, finding that she was not "totally disabled" and thus ineligible for "own occupation" LTD benefits covering the initial 24-month period, or, by implication, for "any occupation" LTD benefits covering the time after that initial period. Mead sought judicial review of this determination by again moving for summary judgment in the district court that had remanded the case. In her papers, Mead sought judgment awarding her LTD benefits "retroactive to the first date of eligibility"—a timeframe that covered both the initial 24-month "own occupation" benefits period and the latter "any occupation" benefits period.

In December 2010, after Reliastar cross-moved for summary judgment, the district court again remanded to Reliastar. *See Mead v. Reliastar Ins. Co.*, 755 F. Supp. 2d 515, 517 (D. Vt. 2010). The court held that Reliastar's denial of Mead's claim for "own occupation" benefits was arbitrary and capricious. *Id.* at 542. Among other flaws it identified in Reliastar's reasoning, the court highlighted that to arrive at the conclusion that Mead was not "totally disabled," Reliastar had "ignored" several physical requirements of Mead's former position, refused to recognize the "ample" objective evidence supporting her subjective

4

complaints of pain, and provided "obviously false or misleading reasons" for discrediting the conclusions of its own neurologist. *See id.* at 529-42. Based on these flaws, the court held that Reliastar's determination as to Mead's eligibility for "own occupation" benefits was patently "unreasonable" and, as a result, it would be "inappropriate" to remand this eligibility determination for a second time. *Id.* at 542. Noting that Reliastar had never addressed the *amount* of "own occupation" benefits owed to Mead, however, the district court remanded that issue for Reliastar to make the required calculation. *Id.* Turning to Mead's request for "any occupation" benefits, the court observed that Reliastar had found her ineligible for these benefits based solely on its determination that she was not "totally disabled" during the initial 24-month "own occupation" benefits period. *Id.* Because it was "possible" that Reliastar could demonstrate that other substantial evidence supported its denial of "any occupation" benefits, the court remanded for Reliastar to make the initial eligibility determination. *Id.*

> The district court issued the following remand order:
>
> [T]he matter is remanded to Relia[s]tar . . . with directions to calculate and award LTD benefits for the Plan's 24-month "own occupation" period, from July 29, 2003, to July 29, 2005, and to determine whether Mead is entitled to "any occupation" disability benefits under the Plan.

*Mead*, 755 F. Supp. 2d at 542. The court concluded its decision by directing the clerk of court to "close the case" but stated that it would entertain a separate motion from Mead for prejudgment interest, attorneys' fees, and costs.[2] *Id.* Shortly thereafter, the clerk of court entered a separate "judgment," which stated that "[t]he issues have been tried or heard and a

---

[2] Mead filed such a motion in January 2011, after the commencement of the instant appeal. The district court summarily denied it as "premature."

5

decision has been rendered," and that the "matter is REMANDED to the plan administrator for further proceedings consistent with [the court's December 2010] opinion." Reliastar timely appealed, resulting in the case now before us.

Reliastar has twice sought to stay the district court's December 2010 remand order during the pendency of its appeal. In its first stay motion, which was filed before any proceedings on remand, Reliastar offered to post bond in an amount equal to Mead's "own occupation" benefits. The district court denied this request without prejudice, observing that "there ha[d] been no monetary award in th[e] case" and its December 2010 "judgment" did not "set out an amount that Reliastar [was] required to pay." The court stated that once the determination as to the amount of "own occupation" benefits became a "final decision," that portion of the December 2010 order "may be amenable to a stay." Following this decision, Reliastar determined on remand that Mead was entitled to "own occupation" benefits totaling $156,000, but that she was not eligible to receive "any occupation" benefits. After making this determination, Reliastar successfully renewed its motion to stay (pending this appeal) that portion of the district court's December 2010 order requiring it to award "own occupation" benefits. For her part, Mead attempted to obtain judicial review of Reliastar's denial of "any occupation" benefits by filing a motion to reopen in the district court. The district court denied the motion on the ground that it "lack[ed] jurisdiction to reopen th[e] case" while this appeal remained pending.

III.    **Proceedings in This Court**.

Mead moves to dismiss the appeal for lack of jurisdiction under 28 U.S.C. § 1291, principally arguing that the district court's December 2010 decision is nonfinal because it did

6

not resolve the amount of "own occupation" benefits to which she was entitled or her eligibility for "any occupation" benefits. Reliastar contends that the district court's decision is final because (1) the court conclusively determined Mead's eligibility for "own occupation" benefits, (2) calculating the amount of "own occupation" benefits owed to Mead is a "ministerial" task not subject to genuine dispute, and (3) Mead's eligibility for "any occupation" benefits can be analyzed separately from the other issues in this case. Reliastar also cites as evidence of finality the district court's directive to "close the case" and the entry of a separate judgment.

## ANALYSIS

Under 28 U.S.C. § 1291, we have jurisdiction over appeals from "final decisions" of the district court. We have yet to decide conclusively whether, or under what circumstances, orders remanding matters to ERISA plan administrators constitute such "final decisions." *See, e.g.*, *Giraldo v. Building Serv. 32B-J Pension Fund*, 502 F.3d 200, 202 (2d Cir. 2007) (recognizing this as an open question in our circuit). Our sister circuits are split on this issue, and, broadly speaking, fall into three different camps. A majority of circuits—the First, Fourth, Sixth, Eighth, and Eleventh—hold that because an ERISA remand order contemplates further proceedings before the plan administrator, it is not "final" and therefore may not be immediately appealed except when the familiar collateral order doctrine applies. *See Dickens v. Aetna Life Ins. Co.*, 677 F.3d 228, 232 (4th Cir. 2012); *Borntrager v. Cent. States, Se. & Sw. Areas Pension Fund*, 425 F.3d 1087, 1090-92 (8th Cir. 2005); *Bowers v. Sheet Metal Workers' Nat'l Pension Fund*, 365 F.3d 535, 537 (6th Cir. 2004); *Petralia v. AT&T Global Info. Solutions Co.*, 114 F.3d 352, 354 (1st Cir. 1997); *Shannon v. Jack Eckerd Corp.*, 55 F.3d 561,

7

563 (11th Cir. 1995). Several circuits—the Third, Ninth, and Tenth—have analogized ERISA remands to decisions remanding matters to administrative agencies and have imported into the ERISA context their precedents governing the finality of administrative remand orders, which permit immediate appeals in certain circumstances. *See Papotto v. Hartford Life & Acc. Ins. Co.*, 731 F.3d 265, 270-72 (3d Cir. 2013); *Rekstad v. First Bank Sys., Inc.*, 238 F.3d 1259, 1262 (10th Cir. 2001); *Hensley v. Nw. Permanente P.C. Ret. Plan & Trust*, 258 F.3d 986, 993 (9th Cir. 2001), *overruled on other grounds by Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 966 (9th Cir. 2006). Staking out a lone position, the Seventh Circuit analyzes the finality of ERISA remand orders by reference to the statute governing remands to the Social Security Administration, 42 U.S.C. § 405(g), which also permits immediate appeals in certain situations. *See Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975, 978-79 (7th Cir. 1999).

We have observed the existence of these differing approaches, *see Giraldo*, 502 F.3d at 202; *Viglietta v. Metropolitan Life Ins. Co.*, 454 F.3d 378, 378-79 (2d Cir. 2006), but have never adopted one of our own because each time the issue arose, the challenged ERISA remand order was not appealable under any approach.[3] For example, in *Viglietta* we dismissed an

---

[3] In a number of other cases, we exercised jurisdiction over similar appeals only after concluding that the appealed-from order was not actually the decision remanding to the ERISA plan administrator. *See Nelson v. Unum Life Ins. Co. of America,* 468 F.3d 117, 119 (2d Cir. 2006) (per curiam) (exercising jurisdiction after emphasizing that the plaintiff was "not appealing from the remand" to the plan administrator, which was in her favor); *Nichols v. Prudential Ins. Co. of Am.*, 406 F.3d 98, 103-04 (2d Cir. 2005) (concluding that our jurisdiction was valid because "the district court's order [was] a dismissal without prejudice, not a remand"); *see also Zervos v. Verizon N.Y.*, 277 F.3d 635, 644-46 (2d Cir. 2002) (holding that we had jurisdiction pursuant to 28 U.S.C. § 1292(a)(1) to review an ERISA remand order because it "was an effective denial of the plaintiff's request for injunctive relief"). In one other case, we invoked the doctrine of "hypothetical jurisdiction" to reach the merits of an

appeal from an order remanding to the claims administrator to clarify the factual record and for reconsideration in light of additional findings because the order would "not be appealable . . . under the case law of this or any other circuit." *See Viglietta*, 454 F.3d at 379-80. Similarly, in *Giraldo* we dismissed an appeal after concluding that the underlying remand order was "unappealable under any established body of case law." *See Giraldo*, 502 F.3d at 202-04. This appeal is different. It requires us to adopt our own framework because, as we explain below, the district court's December 2010 remand order would be immediately appealable under the Seventh Circuit's approach.

Although our prior cases have not adopted a specific analytical approach for determining the finality of ERISA remand orders, they provide us with three considerations that are instructive as we develop our own framework. First, we have repeatedly expressed what we might characterize as the default position that, under the general principles of finality, ERISA remand orders usually are not "final" because they "requir[e] further action" by the plan administrator, *Nichols*, 406 F.3d at 103-04, thus "creat[ing] a real danger of piecemeal appeals" if an immediate appeal were available, *Nelson*, 468 F.3d at 119. *See also Giraldo*, 502 F.3d at 202-03 (assuming that the ERISA remand order would be unappealable unless the approaches used by the Seventh or Ninth Circuits applied); *Viglietta*, 454 F.3d at 379-80 (same). Second, notwithstanding our default position, we have examined ERISA remand orders on a case-by-case basis to determine whether the particular facts presented

---

ERISA remand order without resolving the "difficult" jurisdictional issue. *See Crocco v. Xerox Corp.*, 137 F.3d 105, 108-09 (2d Cir. 1998). That option is not available to us because "the Supreme Court has substantially ended that practice" except in narrow circumstances not present here. *Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101 (1998)).

indicate that a remand order may be appealable under an approach already established in a sister circuit. *See Viglietta*, 454 F.3d at 379 (indicating that it need not adopt the approaches used by the Seventh or Ninth Circuits because "the remand order *here* would not be appealable" under those approaches); *see also Giraldo*, 502 F.3d at 202-03 (same); *Zervos*, 277 F.3d at 644-46 (considering the "practical effect[s]" of a delayed appeal). Last, we have observed an important similarity between ERISA remand orders and orders remanding matters to administrative agencies—the practical reality that, like an administrative agency, an ERISA plan administrator that wishes to challenge a remand order may be unable to appeal after the proceedings on remand take place. *See Crocco*, 137 F.3d at 108-09 (citing *Perales v. Sullivan*, 948 F.2d 1348, 1353 (2d Cir. 1991) (recognizing an exception to the finality requirement "when the agency to which the case is remanded seeks to appeal, and that agency would be unable to appeal after the proceedings on remand")).

Taking into consideration our prior case law and the various analytical approaches used by our sister circuits, we now hold that remands to ERISA plan administrators generally are not "final" because, in the ordinary case, they contemplate further proceedings by the plan administrator. *See Nelson*, 468 F.3d at 119; *Nichols*, 406 F.3d at 103-04. We decline, however, to adopt a hard-and-fast rule that such orders are *never* immediately appealable in recognition of the reality that, as exemplified by this case, remands to ERISA plan administrators may take on a number of permutations. Instead, as in all cases where our jurisdiction is questionable, we must examine the content of the particular ERISA remand order to determine its appealability. *Accord Pappoto*, 731 F.3d at 272; *Rekstad*, 238 F.3d at 1263. Joining four of our sister circuits, we further hold that, to preserve an ERISA

plan administrator's ability to obtain appellate review of a nonfinal remand order, we generally will interpret a district court's remand order as having retained jurisdiction over the case such that, after a determination by the plan administrator on remand, either party may seek to reopen the district court proceeding and obtain a final judgment. *See Petralia*, 114 F.3d at 354; *accord Dickens*, 677 F.3d at 234; *Young v. Prudential Ins. Co. of Am.*, 671 F.3d 1213, 1216 (11th Cir. 2012); *Bowers*, 365 F.3d at 537. Because the remand order in this case is amenable to such an interpretation, we leave for another day the question of whether our case law governing the finality of administrative remands permits an immediate appeal by an ERISA plan administrator when the district court's remand order cannot be construed as having retained jurisdiction over the case. Finally, although the remand order here is appealable under the Seventh Circuit's approach, we decline to adopt that approach because, in our view, it strays too far from settled principles of finality and relies on statutory language present in the Social Security Act for which ERISA has no analogue. Under the framework that we now apply, we lack jurisdiction over Reliastar's appeal.

## A.     General Principles of Finality

Under § 1291, a "final" decision is "one that conclusively determines the pending claims of all the parties to the litigation, leaving nothing for the court to do but execute its decision." *Citizens Accord, Inc. v. Town of Rochester, N.Y.*, 235 F.3d 126, 128 (2d Cir. 2000) (per curiam) (citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978)). "The purpose of this rule is to provide the parties with an opportunity for a single review of all the questions raised at the trial level and thereby to avoid the waste of time and the delay in reaching trial

11

finality which ensue when piecemeal appeals are permitted." *Nelson*, 468 F.3d at 119 (internal quotation marks and alteration omitted).

"Finality is determined on the basis of pragmatic, not needlessly rigid *pro forma*, analysis." *Fiataruolo v. United States*, 8 F.3d 930, 937 (2d Cir. 1993). In general, "[a]ll that is required [to confer appellate jurisdiction] is that there be some manifestation by the district court that it intends the decision to be its final act in the case." *Nelson*, 468 F.3d at 119 (internal quotation marks omitted). On the other hand, a district court's intent, standing alone, is not sufficient to confer finality upon *every* decision. *See Henrietta D. v. Giuliani*, 246 F.3d 176, 181 (2d Cir. 2001) ("[A] district court's assertion of finality cannot deliver appellate jurisdiction to review a decision that is not otherwise 'final' for purposes of § 1291."). Instead, the district court's intent "is relevant for purposes of § 1291 [only] when the court's rulings reveal that the action *could be final* and it therefore matters whether the trial judge contemplated further proceedings." *Id.* (emphasis in original); *see also Dudley v. Penn-America Ins. Co.*, 313 F.3d 662, 668 (2d Cir. 2002) (Sotomayor, J. concurring) ("The determination of whether a final judgment has been rendered is made by examining the record of the case both for the necessary elements of such a judgment . . . and for the court's intent that its ruling represent the final disposition of the case."). Ultimately, "[a]ppealability turns on what has been ordered, not how it has been described" by the district court. *Henrietta D.*, 246 F.3d at 181 (internal quotation marks omitted).

Applying these principles, the district court's December 2010 remand order is not final. First, by remanding to Reliastar the issue of Mead's eligibility for "any occupation" benefits without addressing the merits of that issue, the court's order did not "conclusively

12

determine[ ]" Reliastar's liability for Mead's sole federal claim under § 502(a)(1)(B) of ERISA.[4] *See Citizens Accord*, 235 F.3d at 128. Reliastar argues that Mead's eligibility for "any occupation" benefits is a separable issue that "has no legal effect or impact" on our review of the only issue it seeks to challenge on appeal—the propriety of the district court's determination that Mead was eligible for "own occupation" benefits. While it may be true that Mead's eligibility for "any occupation" benefits has no practical effect on whether she is entitled to receive "own occupation" benefits, this has no impact on our jurisdiction because a district court's decision that does not dispose of all of the plaintiff's claims for relief is not "final." *See Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 744 (1976) (decisions granting partial summary judgment but leaving the "award[] of other relief . . . to be resolved have never been considered . . . 'final' within the meaning of 28 U.S.C. § 1291").

Second, even if we could distinguish between Mead's requests for "own occupation" and "any occupation" benefits for purposes of our jurisdictional analysis, the district court's decision as to "own occupation" benefits would itself not be final because the court did not determine the amount of those benefits owed to Mead. Instead, the court remanded this

---

[4] In her initial complaint, Mead sought only a declaratory judgment that she was entitled to 24 months of "own occupation" benefits, and did not allege that she was entitled to "any occupation" benefits. In her first summary judgment motion, however, Mead requested a monetary judgment awarding benefits for the "any occupation" benefits period. Following the district court's first 2008 remand, Reliastar determined that Mead was not entitled to "any occupation" benefits based on its conclusion that she was not totally disabled and Mead, without objection from Reliastar, sought judicial review of this determination in her second summary judgment motion. Because the parties have consistently treated Mead's eligibility for "any occupation" benefits as part of her overarching ERISA claim, we treat this issue as if Mead raised it in her initial complaint. *See* Fed. R. Civ. P. 15(b) ("When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings."); *accord Jund v. Town of Hempstead*, 941 F.2d 1271, 1287 (2d Cir. 1991) (refusing to exclude claims not alleged in complaint where claims had been addressed on the merits both on summary judgment and at trial).

issue for Reliastar to calculate the amount, explicitly recognizing when denying Reliastar's first stay motion that "there ha[d] been no monetary award in th[e] case" and that its December 2010 "judgment" did not "set out an amount that Reliastar [was] required to pay." Because the district court left unresolved the amount of relief, its December 2010 order was not final. *See Henrietta D.*, 246 F.3d at 180-82 (declaratory judgment found not appealable where it "did nothing more than determine liability, leaving the measure of prospective relief for another day"); *In re Fugazy Express, Inc.*, 982 F.2d 769, 775 (2d Cir. 1992) ("An order granting summary judgment on the issue of liability, but requiring a calculation of damages, is not an appealable final order); *see also Rekstad*, 238 F.3d at 1262 ("[A] district court's grant of summary judgment to the plaintiff on an ERISA claim that [leaves] the question of damages unresolved [is] not a final appealable order.").

With respect to the above rule, Reliastar argues that it is entitled to application of the exception under which an order resolving liability but not damages is considered final when only "ministerial tasks relating to computation of damages remain[.]" *In re Penn Traffic Co.*, 466 F.3d 75, 78 (2d Cir. 2006). The "ministerial" designation, however, is "reserved for the case where an award can be executed after a simple arithmetic calculation or where there remains only some other mechanical task." *Transaero, Inc. v. La Fuerza Aera Boliviana*, 99 F.3d 538, 541 (2d Cir. 1996). Here, the formula used by the Plan to calculate Mead's "own occupation" benefits is dependent upon resolving a number of underlying factual questions that, as Reliastar acknowledges, remain disputed following Reliastar's calculation of the benefits amount on remand.[5] These continuing disputes regarding the total amount of the

_____

[5] The district court summarized the Plan's formula for calculating benefits as follows:

14

award convince us that the calculation of Mead's "own occupation" benefits is not a "ministerial" task. *See ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 841 F.2d 494, 496 (2d Cir. 1988) (per curiam) (citing the parties' disagreement regarding damages calculations as evidence that those calculations were not "ministerial" for purposes of determining finality).

The district court's directive to "close the case" and its subsequent entry of a separate "judgment" does not alter the conclusion that the December 2010 order is not final. As we already have observed, finality ultimately turns on the substance of the district court's order, such that "a district court's assertion of finality cannot deliver appellate jurisdiction to review a decision that is not otherwise 'final' for purposes of § 1291." *Henrietta D.*, 246 F.3d at 181. Where, as here, the substance of the remand order from which the appeal is taken leaves unresolved issues as to liability and prospective relief, the district court's entry of a separate judgment and its "directive to close the case [are] insufficient to vest this Court with

---

> The Plan's Schedule of Benefits provided that for Total Disability an individual would ordinarily be covered under a Base Plan which provided a Monthly Income Benefit of "[t]he lesser of 40% of your Basic Monthly Earnings or $15,000.00, minus Other Income." Basic Monthly Earnings was defined as "salary or wage you receive for work done for the Policyholder." Basic Monthly Earnings included bonuses "for those employees with a written bonus agreement that is specifically based on sales of ReliaStar Financial . . . products and/or products of a Relia[s]tar Financial . . . subsidiary," but did not include, among other things, incentive compensation. According to the Plan, "Other Income" includes among other things federal and state social security and disability benefits, "[s]alary continuance benefits provided through your employer; and "[s]alary, commission, bonus or any other income you earn from any work while receiving benefits, except as explained for Residual Disability or the Rehabilitative Work Benefit;" and "voluntarily selected" early retirement benefits. If the receipt of "Other Income" reduced the benefit to less than $50.00, the Plan provided that a minimum monthly income benefit of $50.00 be paid.

*Mead*, 755 F.Supp.2d at 519 (citations and footnote omitted).

15

jurisdiction under § 1291." *Id.* at 179-81 (internal quotation marks omitted); *accord Young*, 671 F.3d at 1215-16 (although the district court entered "what purported to be a final judgment," ERISA remand not "final" because the court "did not end [the plaintiff's] case and left unresolved her entitlement to benefits under the Plan"); *Gerhart v. Liberty Life Assurance Co.*, 574 F.3d 505, 511-12 (8th Cir. 2009) (district court's direction to "terminat[e]" the case and its entry of a separate judgment did not render an ERISA remand order "final" where the court's order lacked a "clear and unequivocal manifestation . . . that its order [was] the end of the case"); *Graham v. Hartford Life & Accident Ins. Co.*, 501 F.3d 1153, 1161 (10th Cir. 2007) (same).

Reliastar expresses concern that it will lose its future right to appeal the remand order unless we reverse the district court's "judgment closing the case." This concern is not unwarranted. For example, if, on remand, an ERISA plan administrator issues a determination sufficiently favorable to a plaintiff that the plaintiff has no reason to seek further judicial review, then the plan administrator is without an obvious avenue to challenge any eligibility determinations made by the district court in its remand order. That is, there is no explicit path by which a plan administrator may reenter the federal court and seek appellate review of substantive rulings made in remand orders. *See* 29 U.S.C. § 1132(a) (not listing plan administrators as "[p]ersons empowered to bring a civil action"); *see also Bowers*, 365 F.3d at 537 (recognizing that ERISA plan administrators may not be able to challenge their own eligibility determinations). To protect the plan administrator's appellate rights, four circuits have attempted to ensure that either party, including the plan administrator, can return to the same district court and obtain entry of a final judgment, which may be appealed

16

and thus provide procedurally for a challenge to the remand order. *See Petralia*, 114 F.3d at 354; *accord Dickens*, 677 F.3d at 234; *Young*, 671 F.3d at 1216; *Bowers*, 365 F.3d at 537. As the First Circuit explained in *Petralia*:

> Ordinarily implicit in a district court's order of remand to a plan fiduciary is an understanding that after a new decision by the plan fiduciary, a party seeking judicial review in the district court may do so by a timely motion filed in the same civil action, and is not required to commence a new civil action. To avoid any misunderstanding that might otherwise occur, we state that we interpret the order of the district court in this case as having retained jurisdiction, in this sense, to hear and decide any timely motion for judicial review filed after further proceedings before the plan fiduciary. This is so regardless of whether the case is formally held open or instead administratively closed on the district court docket in the meantime.

*Petralia*, 114 F.3d at 354; *accord Dickens*, 677 F.3d at 234 (adopting this rule); *Young*, 671 F.3d at 1216 (adopting this rule); *Bowers*, 365 F.3d at 537 (adopting this rule and noting that it "allow[s] either party to challenge the [plan administrator's] ensuing eligibility determination [on remand] by motion before the same [district] court").

We believe that this rule is a sensible one that does not run counter to ERISA's statutory text. Although ERISA authorizes various types of "civil action[s]" by specifying the permissible plaintiffs, defendants, claims, and remedies for each action, *see generally* 29 U.S.C. § 1132(a), it does not contain any provisions governing remands to plan administrators once those actions have been initiated, nor does it explain how judicial review of determinations made on remand is to occur, *compare* 29 U.S.C. § 1132(a), *with* 42 U.S.C. § 405(g) (authorizing "a civil action" to challenge a decision of the Commissioner of Social Security and defining the district court's power to remand and to review the Commissioner's decisions on remand). Thus, while ERISA, by its terms, may preclude a plan administrator from challenging its own determination by filing a *separate* civil action because plan

administrators are not listed as permissible plaintiffs in § 1132(a), nothing in the statutory text prevents a plan administrator from seeking the entry of a final judgment after its determination on remand by filing a motion in a *pending* civil action. Once the court enters a final judgment, the plan administrator may then challenge the remand order on appeal from that judgment. *See In re Barnet*, 737 F.3d 238, 246 (2d Cir. 2013) ("[A]n appeal from any . . . final order[] opens the record and permits review of all rulings that led up to the judgment." (internal quotation marks omitted)).

We thus adopt the rule that a district court's ERISA remand order will generally be interpreted as having retained jurisdiction over the case such that either party may seek to reopen the district court proceeding and obtain a final judgment. The district court's December 2010 remand order in this case is amenable to such an interpretation. As discussed, notwithstanding its directive to "close the case" and its entry of a separate judgment, the district court's December 2010 remand order was nonfinal as a result of its failure to resolve conclusively the issues of liability and damages. The district court's actions following the entry of its remand order also suggest that it retained jurisdiction in anticipation of taking further action once the proceedings on remand occurred. The court acknowledged that "there ha[d] been no monetary award in th[e] case" and that its "judgment" did not "set out an amount that Reliastar [was] required to pay," thus indicating that it intended to rectify that omission once Reliastar calculated the appropriate amount. The district court also denied Mead's motion to reopen after Reliastar denied her request for "any occupation" benefits on the ground that it "lack[ed] jurisdiction to reopen th[e] case" while this appeal remained pending. *See Webb v. GAF Corp.*, 78 F.3d 53, 55 (2d Cir. 1996)

18

("[T]he filing of a notice of appeal ordinarily divests the district court of jurisdiction over issues decided in the order being appealed."). We see this as a further indication that the district court intended to retain jurisdiction during the proceedings on remand because the court gave no suggestion that the *filing of a new action* was necessary for it to consider the arguments raised in Mead's motion. *Cf. Somoza v. N.Y. City Dep't of Educ.*, 538 F.3d 106, 113 n.5 (2d Cir. 2008) (determining that the district court intended to relinquish jurisdiction in its order remanding to an agency because, *inter alia*, the court suggested in its remand order "that any further action in federal court would require the filing of a new complaint"). Reliastar may therefore return to the district court after the proceedings on remand and seek the entry of a final judgment, which it may then appeal.

For all of these reasons, the district court's December 2010 remand order is not "final" under the general principles of finality. As a result, it is immediately appealable only if the collateral order doctrine applies. That doctrine permits an immediate appeal of an otherwise nonfinal order if the order conclusively "resolve[s] important questions separate from the merits" that is "effectively unreviewable on appeal from the final judgment in the underlying action." *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995) (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)). The December 2010 order is not appealable under this doctrine because, among other reasons, the question that it resolved— whether Mead is eligible for "own occupation" benefits under the Plan—is central to the merits of the parties' dispute and, as we have discussed, may be appealed following the entry of a final judgment after the proceedings on remand. *See Swint*, 514 U.S. at 42.

19

### B.    Administrative Agency Remand Exception

Reliastar argues that the district court's remand order would be appealable if we adopted the Ninth Circuit's approach. Applying its own precedents governing the finality of orders remanding matters to administrative agencies, the Ninth Circuit permits an immediate appeal of an otherwise nonfinal ERISA remand order if (1) the order "conclusively resolve[d] a separable legal issue," (2) the order "forces the [plan administrator] to apply a potentially erroneous rule which may result in a wasted proceeding," and (3) "review would, as a practical matter, be foreclosed if an immediate appeal were unavailable." *Hensley*, 258 F.3d at 993.[6] We decline Reliastar's invitation to import the Ninth Circuit's three-part test into our ERISA jurisprudence. As noted, we have our own test for determining the appealability of orders remanding to administrative agencies, *see Perales v. Sullivan*, 948 F.2d 1348, 1353 (2d Cir. 1991), which we have implied may be applicable in the ERISA context, *see Crocco*, 137 F.3d at 108-09. Thus, if we were to incorporate into the ERISA context a test for determining the appealability of an administrative remand order, it would be our own.

This case, however, does not require us to decide definitively whether *Perales* applies to ERISA remand orders because, even assuming it does, the remand order here would not be appealable. *Perales* holds that although "[a] district court's remand to an administrative agency . . . keeps the case alive and hence is ordinarily not appealable," there is an exception to this rule "when the agency to which the case is remanded seeks to appeal, and that agency

---

[6] The Third Circuit employs a somewhat similar test derived from its own precedent governing the finality of remands to administrative agencies. *See Papotto*, 731 F.3d at 270 (ERISA remand order appealable "when: (1) the remand finally resolves an issue, (2) the legal issue is important, and (3) denial of immediate review will foreclose appellate review in the future" (internal quotation marks omitted)).

20

would be unable to appeal after the proceedings on remand." 948 F.2d at 1353; *see also Occidental Petroleum Corp. v. SEC*, 873 F.2d 325, 330 (D.C. Cir. 1989) (collecting cases and noting that nearly every circuit has adopted the general rule that agency remand orders are interlocutory and that most circuits have adopted the above exception to this rule). As we have discussed above, Reliastar will be able to obtain appellate review of the December 2010 remand order after the completion of the proceedings on remand by moving in the district court for the entry of a final judgment and then appealing that judgment. Accordingly, we leave for another day the question of whether the *Perales* rule permits an immediate appeal in circumstances when the district court's remand order cannot be interpreted as having retained jurisdiction, leaving a separate civil action as the only mechanism to challenge the results of the proceedings on remand. *Cf. Somoza*, 538 F.3d at 113 n.5.

## C. Seventh Circuit's Approach

As a final point, Reliastar argues that the district court's December 2010 remand order is immediately appealable under the Seventh Circuit's approach. The Seventh Circuit analyzes the finality of ERISA remand orders by applying the statute governing remands to the Social Security Administration, 42 U.S.C. § 405(g). *See Perlman*, 195 F.3d at 978-79. As explained in *Perlman*, pursuant to the fourth and sixth sentences of that statute, the district court may either (1) enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" (a "sentence-four remand"); or (2) remand the case to the Commissioner for the consideration of new evidence without entering a judgment as to the merits of the Commissioner's decision (a "sentence-six remand"). *Id.* at 978 (quoting 42 U.S.C. § 405(g)). In accordance

21

with the Supreme Court's decision in *Sullivan v. Finkelstein*, the Seventh Circuit noted that, without exception, sentence-four remands are final and appealable under § 1291, while sentence-six remands are not. *Id.* (citing *Sullivan v. Finkelstein*, 496 U.S. 617 (1990)). Under the Seventh Circuit's approach, therefore, a district court's remand order is immediately appealable if the district court passes judgment on the merits of an ERISA plan administrator's decision, regardless of whether it also remands the case to the plan administrator for further proceedings. *See id.* at 979.

Although the district court's December 2010 order would be appealable under the Seventh Circuit's approach because it overturned Reliastar's decision that Mead is not eligible for "own occupation" benefits and is thus akin to a sentence-four remand, *see Mead*, 755 F. Supp. 2d at 542, we expressly decline to adopt the analogy between ERISA and Social Security remand orders espoused by the Seventh Circuit. The Supreme Court's holding in *Finkelstein* that sentence four remands are final and immediately appealable is based on the specific language of 42 U.S.C. § 405(g), which delineates "a 'class of orders' that Congress [has] made 'appealable under § 1291.'" *Forney v. Apfel*, 524 U.S. 266, 270 (1998) (quoting *Finkelstein*, 496 U.S. at 628). The class of appealable orders created by § 405(g) represents an exception that swallows the generally accepted rule that remand orders are interlocutory, rendering the vast majority of such orders appealable. *See Forney*, 524 U.S. at 270 (noting that neither § 405(g) nor *Finkelstein* permits an inference that a remand order "could be 'final' for purposes of appeal only when the Government seeks to appeal" or that "'finality' turns on . . . the availability (or lack of availability) of an avenue for appeal from the different, later, agency determination that might emerge after remand"); *Shalala v. Schaefer*, 509 U.S. 292, 297

n.2 (1993) (noting that a sentence-six remand, which is the only type of interlocutory remand under § 405(g), "may be ordered in only two situations: where the Secretary requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency"). Because ERISA has no provision comparable to § 405(g), analogies to that subsection and the cases interpreting it have no bearing on the appealability of ERISA remand orders, and we decline to expand our jurisdiction by use of such analogy.[7]

## CONCLUSION

We hold that, under the circumstances of this case, the district court's December 2010 remand order is nonfinal under 28 U.S.C. § 1291. Mead's motion to dismiss is GRANTED, and the appeal is DISMISSED for lack of jurisdiction.

---

[7] We note, too, that the other circuits that have considered the Seventh Circuit's approach have rejected it for similar reasons, s*ee Dickens*, 677 F.3d at 232; *Borntrager*, 425 F.3d at 1091; *Bowers*, 365 F.3d at 537-38, and that the Supreme Court has resisted the importation of other Social Security concepts into ERISA, *see Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 830-32 (2003) (holding that the lower court "erred in equating the two statutory regimes" when it imported in the ERISA context the "treating physician rule" contained in the Social Security regulations (brackets omitted)).